**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **CHAMBERS OF**<br>**STEPHANIE A. GALLAGHER**<br>**UNITED STATES MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>**(410) 962-7780**<br>**Fax (410) 962-1812** |

September 22, 2014

LETTER TO COUNSEL:

      RE: *Donna Marie Gerbrick v. Commissioner, Social Security Administration*;
            Civil No. SAG-13-1881

Dear Counsel:

      On June 27, 2013, the Plaintiff, Donna Marie Gerbrick, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Ms. Gerbrick's reply. (ECF Nos. 21, 25, 26). No hearing is deemed necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

      Ms. Gerbrick filed a claim for Disability Insurance Benefits in July, 2009, alleging disability beginning June 12, 2009. (Tr. 224-27). Her claim was denied initially and on reconsideration. (Tr. 118-21, 126-27). A hearing was held on December 14, 2010 before an Administrative Law Judge ("ALJ"). (Tr. 29-63). In a decision issued December 23, 2010, the ALJ determined that Ms. Gerbrick was not disabled during the relevant time frame. (Tr. 98-113). The Appeals Council remanded the case for further consideration. (Tr. 114-17). The ALJ held a second hearing on January 6, 2012. (Tr. 64-95). At the hearing, Ms. Gerbrick requested a closed period of disability from June 12, 2009 to May 31, 2011, based on subsequent medical improvement.[1] (Tr. 14, 68). In a decision issued February 24, 2012, the ALJ again determined that Ms. Gerbrick had not been disabled during the relevant time frame. (Tr. 11-27). This time, the Appeals Council denied Ms. Gerbrick's request for review, (Tr. 1-5), and thus the ALJ's 2012 decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Ms. Gerbrick suffered from the following severe impairments: breast cancer in current remission, depression, and anxiety. (Tr. 17). Despite these impairments, the ALJ determined that Ms. Gerbrick retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that she is further limited to: occasionally climbing ramps or stairs (never ladders, ropes or scaffolds), balancing, stooping, kneeling, crouching and crawling; avoiding

---

[1] At the second hearing, Ms. Gerbrick amended her closing date from November 30, 2010 to May 31, 2011 because she believed, and the ALJ agreed pending a finding of disability, she was entitled to a trial work period. (Tr. 68).

>concentrated exposure to workplace hazards; and carrying out simple to moderately complex tasks in 2-hour increments (which can be accommodated by regularly scheduled breaks) and adapting to simple changes in work setting.

(Tr. 18). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Gerbrick was able to perform jobs existing in significant numbers in the national economy, and that she was not therefore disabled. (Tr. 26).

Ms. Gerbrick presents four main arguments on appeal: (1) the ALJ's hypothetical was defective because it did not properly take into account Ms. Gerbrick's mental impairments, was ambiguous, and was identical to the hypothetical in the first decision that was remanded; (2) the VE's response to the hypothetical was defective because it did not properly take into account Ms. Gerbrick's mental impairments, and bifurcated her past relevant work; (3) the ALJ erroneously discounted Ms. Gerbrick's credibility; and (4) the ALJ erred in weighing the opinion evidence. All of these arguments lack merit.

First, Ms. Gerbrick attacks the validity of the ALJ's hypothetical, and therefore the RFC, in a number of sub-arguments. It should be noted from the outset that the ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). Likewise, a hypothetical question is unimpeachable if it adequately reflects the RFC for which the ALJ had sufficient evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

Ms. Gerbrick claims the ALJ's hypothetical did not accurately reflect the extent of her mental impairments. Pl. Mot. 6-10. For reasons stated throughout this opinion, I disagree. The ALJ found that, based on the medical evidence before her, Ms. Gerbrick suffered from depression and anxiety. (Tr. 17). However, after a thorough evaluation of Ms. Gerbrick's testimony, the progress notes of Dr. Padgett, her treating physician, and the opinion evidence regarding Ms. Gerbrick's mental condition, the ALJ did not find sufficient evidence of mental limitations to the extent Ms. Gerbrick alleged; specifically, limitations due to confusion, forgetfulness, and difficulty communicating. (Tr. 19-25). Most significantly, the ALJ underscored that Dr. Padgett's progress notes from August 2009 to November 2010 did not reference any disabling or remotely serious mental impairment. Rather, the progress notes stated only that Ms. Gerbrick experienced some physical side effects, such as nausea, headaches, fatigue, arm swelling, and mild foot pain, all of which did not last long. (Tr. 438-46, 458-91). Dr. Padgett repeatedly noted that Ms. Gerbrick had little complaints, she "look[ed] well overall," and her "mentation [was] intact." Nonetheless, the ALJ still accounted for Ms. Gerbrick's physical and mental impairments by limiting Ms. Gerbrick to sedentary work that involves carrying out simple to moderately complex tasks. I find that this limitation accurately reflects Ms. Gerbrick's impairments.

Ms. Gerbrick also claims the limitation in the ALJ's hypothetical was ambiguous. Pl. Mot. 5. I disagree. This Court has found that a hypothetical containing the same limitation was not ambiguous when the plaintiff did not object to the question nor did the VE appear confused by it. *See White v. Colvin*, No. 12-2553, 2013 WL 4026921, at *5 (D. Md. Aug. 6, 2013). Here, like in *White*, counsel for Ms. Gerbrick did not object to the ALJ's hypothetical, nor did the VE express any confusion. (Tr. 84-85). Thus, Ms. Gerbrick's argument that the ALJ's hypothetical was ambiguous is unpersuasive.

Next, Ms. Gerbrick claims the hypothetical was "practically the same" as in the first hearing. Pl. Mot. 5. As such, she claims, the ALJ misconstrued the Appeals Council's remand order. The Appeals Council required the ALJ to resolve why the ALJ's RFC determination "d[id] not appear to adequately account for the degree of limitation resulting from the claimant's severe anxiety and depression." (Tr. 115). In the second hearing, the ALJ admitted there was a typo in her first decision; namely, that the limitation in the RFC to carrying out "simple to complex tasks" should have been written as "simple to moderately complex tasks." (Tr. 69). Otherwise, the ALJ noted, there is no real limitation at all. Accordingly, the ALJ amended her hypothetical in the second hearing to include a limitation of "simple to moderately complex tasks." (Tr. 84). Ms. Gerbrick's argument that the ALJ's hypothetical was "practically the same" is therefore without merit.

Second, Ms. Gerbrick claims the VE erred in her testimony by 1) not properly considering Ms. Gerbrick's mental limitations in her response to the ALJ's hypothetical, and 2) bifurcating her past relevant work. Pl. Mot. 10-11. Ms. Gerbrick's first argument is essentially an outgrowth of her argument that the ALJ's hypothetical was defective because it did not properly consider her mental impairments. For the reasons discussed above, this argument is unpersuasive.

Ms. Gerbrick also contends that the VE erred by splitting her previous relevant work into two distinct positions with two different skill levels. This argument is without merit because it is simply factually incorrect. Ms. Gerbrick testified that she worked at a company called LaFarge for 20 years prior to her breast cancer diagnosis. (Tr. 49). For a majority of her time there, she acted as the administrative support for several directors and managers. (Tr. 49). After she declined a professional move to Georgia, she began work as a switchboard operator/receptionist for the company. (Tr. 49). She answered the switchboard, handled the mail, greeted visitors, ordered supplies, etc. (Tr. 50). The fact that these two positions were performed at the same company and may have had some overlapping duties is not reason to group them together. Given Ms. Gerbrick's support of higher level employees as an administrative assistant, the VE's classification of this work as highly skilled (SVP 7) was accurate. Likewise, the VE's classification of Ms. Gerbrick's switchboard operator/receptionist position as semi-skilled (SVP 4) was also accurate. In sum, the VE did not err by splitting Ms. Gerbrick's past relevant work into two distinct positions with different skill levels.

Third, Ms. Gerbrick argues that the ALJ erroneously discounted her credibility regarding the extent of her symptoms. Pl. Mot. 11-13. Specifically, Ms. Gerbrick contends the ALJ did

not properly consider her substantial work history. I disagree. In this Circuit, it is well-established that an ALJ must follow a two-step process for assessing a claimant's assertions about her impairments and symptoms. *Craig*, 76 F.3d at 594-96. First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment that reasonably could be expected to cause the alleged pain. *Id.* at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). Second, the ALJ must evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects the claimant's ability to work." *Id.* at 595.

Here, the ALJ found that Ms. Gerbrick suffered from medical impairments reasonably expected to cause her alleged symptoms. (Tr. 20). However, the ALJ found Ms. Gerbrick's statements concerning the intensity, persistence, and limiting effects of these symptoms not credible to the extent they were inconsistent with the RFC assessment. (Tr. 20). Ms. Gerbrick claims that, in evaluating her credibility, the ALJ failed to take into account her 20-year work history at LaFarge. While the ALJ did not expressly note Ms. Gerbrick's work history at LaFarge in her credibility determination, she did state in her decision that Ms. Gerbrick acquired work skills from past relevant work as a receptionist and administrative assistant—both positions she performed at LaFarge. (Tr. 26). The ALJ, therefore, was fully aware of Ms. Gerbrick's work history. Moreover, in the first hearing, the ALJ specifically asked Ms. Gerbrick about her past work: "It looks like you worked as an office administrative assistant for a long time. Let's see, pretty much continuously for the past 15 years until March '09, correct?" (Tr. 49). Thus, Ms. Gerbrick's argument that the ALJ did not consider her past relevant work by not specifically mentioning it in her credibility determination is unpersuasive.

In any event, a claimant's work history is only one factor of many to take into account when determining credibility. *Craig*, 76 F.3d at 595. In her decision, the ALJ thoroughly discussed Ms. Gerbrick's treatment, symptoms, medication, daily activities, and work attempts post-treatment. (Tr. 19-20). After a thorough evaluation of Ms. Gerbrick's testimony and the medical evidence, in particular the progress notes of her treating physician, the ALJ determined that Ms. Gerbrick's allegations about the severity of her symptoms were inconsistent and, therefore, not credible. *See id.* ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence . . . ."). I find that the ALJ properly assessed Ms. Gerbrick's credibility and substantial evidence supports her credibility determination.

Finally, in her response memorandum, Ms. Gerbrick argues that the ALJ did not properly assign weight to the opinion evidence. Pl. Resp. 1-5. First, Ms. Gerbrick contends that the ALJ gave inadequate weight to the opinion of her treating physician, Dr. Padgett. Pl. Resp. 1-2. A treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In fact, if a doctor's own notes provide insufficient or contradictory support for the doctor's conclusions, an ALJ may properly assign less than controlling weight. *See Forsyth v. Astrue*, No. CBD-09-2776, 2011 WL 691581, at *4 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the physician's conclusions were inconsistent with his

own medical records); *Cramer v. Astrue*, No. 9:10-1872-SB-BM, 2011 WL 4055406, at *9 (D.S.C. Sept. 12, 2011) (upholding assignment of less than controlling weight to opinions "that were based in large part on the plaintiff's self-reported symptoms rather than clinical evidence and that were not consistent with the doctor's own treatment notes"). In this case, the ALJ found that a letter written by Dr. Padgett dated May 2011 regarding Ms. Gerbrick's condition was largely inconsistent with his own detailed treatment notes. In the letter, Dr. Padgett concluded that Ms. Gerbrick was not able to work on a regular basis due to continued treatment and the "seriously limiting side effects of medication." (Tr. 493). He explained that Ms. Gerbrick experienced confusion and forgetfulness from her chemotherapy treatment that ended November, 2009, and throughout her Herceptin treatment that ended November, 2010. (Tr. 492). In contrast, Dr. Padgett's progress notes from August 2009 to November 2010 do not mention any mental side effects whatsoever; rather, the progress notes state only that Ms. Gerbrick experienced some physical side effects. (Tr. 438-46, 458-91). Dr. Padgett repeatedly noted that Ms. Gerbrick had little complaints, she "look[ed] well overall," and her "mentation [was] intact." (Tr. 438-46, 458-91). Dr. Padgett even noted that Ms. Gerbrick was looking for work and had several applications out, yet never mentioned any hesitation about her ability to work. (Tr. 487). Because Dr. Padgett's opinion in his May 2011 letter is inconsistent with his own detailed progress notes, the ALJ properly gave it little weight.[2]

Ms. Gerbrick also contends that the ALJ gave too little weight to the opinion of Dr. Benedek, who Ms. Gerbrick hired to perform a psychological assessment of her in December 2011. Pl. Resp. 2. Notably, Dr. Benedek performed his evaluation well after Ms. Gerbrick's symptoms subsided. (Tr. 76-77). In fact, Ms. Gerbrick was employed as an administrative assistant at the time of the evaluation. (Tr. 77). In the assessment, Dr. Benedek recorded information Ms. Gerbrick had told him about the problems she experienced with confusion and forgetfulness. (Tr. 495). Dr. Benedek also quoted Ms. Gerbrick as saying her "'communication issues'" made it "'impossible'" for her to handle the phone-heavy position from which she was terminated in February 2011. (Tr. 495). He then opined that Ms. Gerbrick was disabled from June 2009 to Summer 2011. (Tr. 499). The ALJ properly pointed out that, even if Ms. Gerbrick had difficulty communicating on the phone, this limitation did not preclude her from all work. (Tr. 25). Moreover, like with side effects of confusion and forgetfulness, Dr. Padgett's progress notes lack any complaints about communication difficulties. Because Dr. Benedek's opinion was inconsistent with the balance of the medical evidence, the ALJ properly gave it little weight.

Ms. Gerbrick also contends that the ALJ gave too much weight to the opinions of the state medical consultants. Pl. Resp. 3-4. The opinions of state agency medical consultants are given weight "only insofar as they are supported by evidence in the record, considering such factors as the supportability of the opinion in the evidence . . . the consistency of the opinion with the record as a whole, and any explanation for the opinions provided by the State agency medical . . . consultant." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). In certain circumstances, the opinions of state agency medical consultants may be entitled to greater weight

---

[2] The ALJ also considered a letter written by Dr. Padgett dated October 13, 2009, (Tr. 24), which opined that Ms. Gerbrick was "100% disabled." (Tr. 428). Given that this letter was written in the midst of progress notes that documented Ms. Gerbrick's quick recovery and minimal symptoms, the ALJ properly gave it limited weight.

than the opinions of treating or examining sources. *Id.* at *3. Here, the ALJ gave moderate to great weight to the opinions of the state agency medical consultants because they were consistent with the balance of the medical evidence; specifically, they were void of disabling limitations, and noted only moderate limitations in maintaining attention and concentration for extended periods of time. (Tr. 419, 423). In his Mental RFC assessment, Dr. Wessel even noted that Ms. Gerbrick's RFC "appears compatible with work related functions and activities." (Tr. 425). Most notably, the state agency medical assessments were consistent with Dr. Padgett's progress notes, unlike Dr. Padgett's May 2011 letter and Dr. Benedek's December 2011 psychological assessment. Thus, the ALJ properly gave moderate to great weight to the opinions of the state agency medical consultants.

In her response memorandum, Ms. Gerbrick also claims the ALJ did not properly consider the opinion of Dr. Taylor-Ennis, who performed a mental status evaluation for the state agency in August 2009. Pl. Resp. 4-5. In her assessment, Dr. Taylor-Ennis noted that Ms. Gerbrick "appeared to be experiencing difficulty with short-term memory." (Tr. 406). Ms. Gerbrick repeatedly underscores this limitation, yet the majority of the assessment explained how well Ms. Gerbrick functioned, noting that "her thought processes were logical in content and there appeared to be no evidence of a thought disorder." (Tr. 406). The ALJ pointed out that during the assessment Ms. Gerbrick was capable of recalling three words after a five-minute distraction, and recalling seven digits forward and five backwards. (Tr. 24). Upon review of the ALJ's decision, I find that, contrary to Ms. Gerbrick's assertion, the ALJ fully considered Dr. Taylor-Ennis's opinion.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 21) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 25) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge